**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DANA J. VIVAS,
on behalf of T.F.V.,**

        **Plaintiff,**

  v.                              **Civil Action 2:20-cv-5343
Judge Algenon L. Marbley
Magistrate Judge Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Dana J. Vivas, acting on behalf of T.F.V., a minor, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying T.F.V.'s application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff is T.F.V.'s mother and legal guardian, who protectively filed an application for SSI on T.F.V.'s behalf on October 11, 2017, alleging that he was disabled beginning December 1, 2016. (Doc. 12, Tr. 167–72). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on September 26, 2019. (Tr. 32–61). On November 25, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 16–31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 11, 2020 (Doc. 1), and the Commissioner filed the administrative record on March 22, 2021 (Doc. 12). Plaintiff filed the Statement of Errors, (Doc. 16), on June 14, 2021, Defendant filed an Opposition, (Doc. 17), on July 29, 2021, and no reply was filed. Thus, this matter is now ripe for consideration.

### A. Personal Background

T.F.V. was born in 2009. (Tr. 20). At the time of the administrative hearing, T.F.V was in the fourth grade. (Tr. 41).

### B. Relevant Hearing Testimony

The ALJ summarized T.F.V.'s hearing testimony as follows:

> [T.F.V.] testified at the hearing that he is currently ten years old, and he is doing well in school. His favorite subject is math, but he does not like gym. [T.F.V.] has a good friend in school, and he has additional friends in his neighborhood. He likes to play tag with his friends. [T.F.V.] stated that he has homework from school. He does his homework through the computer, and usually completes his homework on time. [T.F.V.] stated that he does household chores including sweeping the floor, washing dishes, and cleaning the bathroom. He also helps take care of his pets. He takes medications to control his seizures but he still experiences seizures. The seizures usually take place when he is in his room or on the couch watching television. He experienced one seizure while he was at school. [T.F.V.] stated that he enjoys watching television, and he likes to play video games.

(Tr. 23).

The ALJ also summarized T.F.V.'s mother's testimony as follows:

> [T.F.V.]'s mother testified that [T.F.V.] does not always do his chores, but he typically does his homework and takes care of his pets. She stated that [T.F.V.] previously experienced grand mal seizures every day. Now he has grand mal seizures once or twice per week, and lasting two-three minutes, and focal or staring seizures every day that last for one or two minutes. [T.F.V.] is tired after his seizures and he is sometimes confused. [T.F.V.]'s doctors frequently adjust his medication, but [T.F.V.]'s mother does not believe the medications are effective. [T.F.V.] is doing "ok" in school, but he is behind because his seizures cause him to miss too many days. [T.F.V.] has memory problems, and he often forgets things that he previously learned. [T.F.V.] does not play football because of his asthma and seizures.

(*Id.*).

      **C.**      **The ALJ's Decision**

The ALJ first found that T.F.V. was a school-age child when the application was filed and remained a school-age child as of the date of the decision. (Tr. 20). Next, he found that T.F.V. had not engaged in substantial gainful activity since his application date. (*Id.*). At the next step of the sequential evaluation process, the ALJ concluded that T.F.V. had severe impairments including seizure disorder, asthma, obesity, and neurodevelopmental disorders. (*Id.*). He also found that T.F.V.'s impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments, or functionally equal those requirements. (*Id.*).

The ALJ then reviewed T.F.V.'s educational records, T.F.V.'s medical records, and the opinion evidence contained in the record. Relevant here, he reviewed the opinion evidence of the state agency consultants:

> Turning to evaluation of this evidence, Janet Souder, Psy.D., and Bruce Mirvis, M.D., evaluated the claimant's records on behalf of the State agency at the initial level and found that the claimant had less than marked limitations in his ability to acquire and use information, attend and complete tasks, interact and relate with others, and in his health and physical well-being, and no limitations in his ability to move and manipulate objects, and care for himself (1A/6). On reconsideration, Patricia Kirwin, Ph.D., and Louis Goorey, M.D., determined that the claimant has less than marked limitations in all six functional domains (3A/9). The opinions of Drs. Kirwin and Goorey are more persuasive because they are more consistent with the record as a whole as discussed above. However, the undersigned has identified marked limitations in the claimant's health and physical well-being due to the claimant's intractable seizure disorder in combination with his other impairments.

(Tr. 27).

The ALJ determined that in the six domains of functioning that are pertinent to a child's benefits application, T.F.V. had less than marked limitation in: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and

manipulating objects, and caring for himself. (Tr. 22). T.F.V. was found to have a marked limitation in health and physical well-being. (*Id.*). Because a finding of one "extreme" limitation or two "marked" limitations is needed in order to support an award of benefits, the ALJ denied Plaintiff's claim. (Tr. 27).

## II. STANDARD OF REVIEW

To qualify for SSI as a child under the age of eighteen, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of eighteen is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3)

4

> does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
> (1) Acquiring and using information;
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for yourself; and
> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results:
>
> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

In the context of that legal framework, this Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*,

756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to properly evaluate T.F.V.'s impairments under Listing 111.02. (Doc. 16 at 4–8). Plaintiff also argues that the ALJ erred in determining that T.F.V. had less than marked limitations in the domain of "attending and completing tasks." (*Id.* at 8–13). The Undersigned considers each argument in turn.

### A. Listing 111.02

Listing 111.02 is the listing for epilepsy, and requires that the condition be documented by a detailed description of a typical seizure and be characterized by either:

> A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or
>
> B. Dyscognitive seizures or absence seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.

20 C.F.R. pt. 404, subpt. P, app. 1 § 111.02.

Plaintiff says that T.F.V. "put forth sufficient evidence to demonstrate that his impairments meet and/or equal Listing 111.02." (Doc. 16 at 5). She further alleges that the ALJ failed to properly explain how he concluded from the evidence that T.F.V. failed to meet the listing, and that his decision was thus not supported by substantial evidence. (*Id.* at 7). In response, Defendant notes that there was conflicting evidence in the record regarding the frequency of T.F.V.'s seizures, the ALJ believed that Plaintiff's testimony was inconsistent with the diagnostic tests and other medical evidence, and that the ALJ properly articulated his findings. (Doc. 17 at 5–13). The

Undersigned finds the ALJ's conclusion is supported by substantial evidence.

Specifically, the ALJ concluded:

The claimant's seizure disorder does not meet or medically equal the severity of listing 111.02 because the record does not establish that the claimant experiences generalized tonic clonic seizures occurring at least once per month for three consecutive months despite treatment; or dyscognitive or absence seizures occurring once each week for three consecutive months despite adherence to prescribed treatment. The claimant's mother asserts that the claimant experiences seizures as often as every day (7E/2). However, the available objective evidence does not support this frequency. As discussed below, the claimant has undergone numerous electroencephalogram (EEG) studies, but the studies have not recorded seizures (1F/4, 7; 6F/38; 8F/4; 10F/82, 87).

(Tr. 21).

In support of meeting the listing, Plaintiff primarily cites the testimony of herself and T.F.V. at the administrative hearing, as well as their reports of seizures to doctors in the medical records. (Doc. 16 at 6). For instance, Plaintiff testified at the hearing that T.F.V. had "one or two [grand mal seizures] a week" and "focal seizures . . . every day." (Tr. 53). She further cites medical records noting T.F.V.'s history of seizures and representations of continued seizures. (Doc. 16 at 6; *see, e.g.,* Tr. 277 (noting "previous seizures" and "concerns of possible [ ] seizures"); Tr. 279 (noting "a history of epilepsy"); Tr. 290 (noting T.F.V. "has started having seizures again"); Tr. 292 (noting T.F.V. was "doing well until recently when he started having seizures again")). As her sole piece of objective evidence in support, Plaintiff cites to a record of an MRI of T.F.V.'s brain from December 4, 2017. (Doc. 16 at 6 (citing Tr. 460 (noting "[s]ubtle findings of polygria/cortical dysplasia along the posterior inferior lateral left frontal lobe just above the sylvian fissure" and a nonspecific finding that "potentially could be related to subtle overlying cortical dysplasia"))).

Yet, the ALJ considered this same information. He noted Plaintiff asserts T.F.V. has seizures as often as "every day." (Tr. 21 (citing Tr. 223); Tr. 23 (citing Tr. 184)). He also noted that the medical record confirms that T.F.V. has a seizure disorder. (Tr. 23 (citing Tr. 502)). And

7

he expressly considered interpretations of MRI and CT scans of T.F.V.'s brain, including the same December 2017 scan. (Tr. 26 (citing Tr. 1329, 1374, 1382)). Unlike Plaintiff, however, he also highlighted conflicting evidence regarding the frequency of the seizures: in January 2018 T.F.V.'s "mother reported . . . he had not experienced a tonic seizure in the past month" (*id.* (citing Tr. 499)); in April 2018 she complained again that T.F.V. was having daily seizures, but none had occurred "from the awake state in over a year" (*id.* (citing Tr. 1315); and in August 2018, T.F.V.'s neurologist noted that the seizures had not been clearly witnessed and their frequency remained "somewhat unclear" (*id.* (quoting Tr. 1320)). Additionally, the ALJ identified the numerous EEG studies T.F.V. has undergone, and the failure of those studies to record any seizures. (Tr. 21 (citing Tr. 279 (May 2017 EEG "was normal awake and asleep"), 282 (noting "normal" EEG results from February 2013 and 2017), 386 (September 2017 "sleep deprived video-EEG performed with the patient awake and asleep is normal"), 453 (indicating a two-day, long-term monitoring EEG with "[n]o clinical events . . . recorded"), 575 (interpretation of several days of long-term monitoring EEG in April 2018 in which no seizures nor clinical events of concern were recorded), 580 (same))).

In sum, the ALJ appropriately considered the evidence before him, including that which Plaintiff identifies as most significant in her statement of errors. And the evidence he based his conclusion on is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion that the frequency of the seizures did not rise to the level described in Listing 111.02. The Undersigned therefore finds that the ALJ's opinion is supported by substantial evidence.

Plaintiff further argues, however, that the ALJ did not properly explain his decision, which she says is required by *Reynolds v. Commissioner of Social Security*, 424 Fed. App'x 411 (6th Cir.

8

2011). (Doc. 16 at 7–8). In that case, the Sixth Circuit made clear that when an ALJ evaluates whether a claimant meets a listed impairment, the ALJ must "actually evaluate the evidence," compare it to the proper listing, "and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 Fed. App'x at 416. Here, the ALJ's opinion met the standard required by *Reynolds*.

First, it should be noted that the failure to explain in *Reynolds* was extreme. There, the ALJ began his step-three analysis with a conclusion that the claimant failed to meet two different listings, but then proceeded to analyze only one of the two listings. *Id.* at 415. In other words, he "skipped an entire step of the necessary analysis[,]" and provided no explanation of his previously stated conclusion. *Id.* at 416. Here, after the ALJ concluded that T.F.V.'s seizure disorder did not meet Listing 1112.02, he provided the precise reason why: because the record did not establish the frequency of seizures required by the Listing. (Tr. 21 ("the record does not establish that the claimant experiences generalized tonic clonic seizures occurring at least once per month for three consecutive months despite treatment; or dyscognitive or absence seizures occurring once each week for three consecutive months despite . . . treatment")). He further explained how his evaluation of the evidence led him to that conclusion. The ALJ noted that, despite Plaintiff's assertions that T.F.V. had seizures as often as every day, the available objective evidence, particularly the EEG studies, did not support that frequency. (*Id.*). In short, nothing about the ALJ's explanation obscures his reasoning or prevents "meaningful judicial review."

Because the ALJ's conclusion that T.F.V.'s seizure condition did not meet Listing 111.02 was supported by substantial evidence and was properly explained, the Undersigned finds no reversible error.

### B. Domains

Next, Plaintiff says the ALJ should have found T.F.V. to have "marked" limitations in two domains of functioning. Such a finding would mean that T.F.V. had an impairment functionally equivalent to the listings. (Doc. 16 at 8–13).

In reviewing the evidence, the ALJ concluded that T.F.V. had a marked limitation in the domain of health and physical well-being but found "less than a marked" limitation in the five remaining domains. (Tr. 22). Plaintiff asserts that "the ALJ erred in determining that [T.F.V.] had less than marked limitations in the domain of 'attending and completing tasks.'" (Doc. 16 at 8). Because Plaintiff alleges error as to only this domain, the Undersigned limits her discussion to the same.

> In reviewing the domain of attending and completing tasks, the ALJ determined,
>
> [T.F.V.] exhibits traits associated with attention deficit hyperactivity disorder (ADHD (10F/163). His IEP records show that his teachers report significant concerns related to inattention, and report that [T.F.V.] has weaknesses in his ability to complete academic tasks in a timely manner due to a lack of organization, prioritizing, and recalling instructions (11F/14, 15). [T.F.V.] is attending school under a Section 504 plan due to his seizure disorder and asthma (9F/6, 7). [T.F.V.]'s mother reports that [T.F.V.] sometimes appears "dazed" or "zoned out" due to focal dyscognitive seizures that can interfere with his ability to pay attention (18F/1). His second-grade teacher reported that [T.F.V.] is often fatigued in class and he requires two rest breaks during the day (9F/14).
>
> However, earlier records show that [T.F.V.] experienced normal development and that he had no identifiable cognitive or motor delay (6F/91). He has shown strengths in the areas of written expression and mathematics, and he is able to complete grade level assignments with "minimal to zero assistance" (11F/15). [T.F.V.]'s mother reports that she does not believe [T.F.V.] has attention deficit symptoms (16F/8).

(Tr. 24).

Under the regulations, the domain of attending and completing tasks requires consideration of how well a claimant is able to focus and maintain attention and how well he begins, carries through, and finishes activities. 20 C.F.R. § 416.926a(h). At base, Plaintiff argues that the material

10

the ALJ considered in the first paragraph of his analysis, suggesting "significant concerns related to inattention," is weightier than that considered in his second paragraph, suggesting "no identifiable cognitive . . . delay." (*Id.*). Specifically, Plaintiff points to T.F.V.'s Individualized Education Program ("IEP"), which states that T.F.V.'s cognitive scores suggest he "is behind other children his age on a range of thinking skills. He will likely learn at a slower pace, and will require more resources, repetition, and time to be successful." (Tr. 1188; *see* Doc. 16 at 11–12). Further, Plaintiff argues that the ALJ's recognition that T.F.V. was nonetheless able to "perform reasonably well" should be viewed in light of the fact that he was performing in a "structured supportive setting." (Doc. 16 at 12 (citing SSR 09-1P, 2009 WL 386031, at *7 ("The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe we will find the limitation to be."))).

The ALJ did evaluate the IEP and was aware of these same limitations and accommodations. (Tr. 24 (citing Tr. 1188–89)). But he concluded that, on balance, the evidence did not support a marked limitation in attending and completing tasks. In support, he cited: medical records indicating that T.F.V. had normal development with no identifiable cognitive delay (Tr. 24 (citing Tr. 439)); the IEP, which indicated T.F.V. had strong skills in written expression and mathematics and could complete grade-level assignments with "minimal to zero assistance" (*id.* (citing Tr. 1189)); and clinical notes in which Plaintiff indicated she did not believe T.F.V. had any ADHD symptoms (*id.* (citing Tr. 1466)). Additionally, the ALJ noted two different medical opinions from state agency physicians, both of which found T.F.V. had less than a marked limitation in attending and completing tasks. (Tr. 27 (citing Tr. 67, 81)). Together, this is relevant evidence that a reasonable mind might accept as adequate to support the conclusion that T.F.V.'s

11

attention problems did not rise to the level of marked, that is, that those problems did not constitute a "more than moderate" limitation.

The Undersigned notes that the task before the Court is not to reweigh the evidence presented. If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)). In other words, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Because the ALJ's finding that T.F.V. did not have an impairment that was functionally equivalent to a listing was supported by substantial evidence, the Undersigned finds no reversible error.

## V. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which

objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   October 8, 2021                                      /s/ Kimberly A. Jolson
                                                             KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE